IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TAMARA L. HIGGENBOTHAM, )
)
Plaintiff, )
)
v. ) Case No. 13-2624-JTM
)
DIVERSIFIED CONSULTANTS, INC., )
)
Defendant. )

# **ORDER**

Plaintiff Tamara L. Higgenbotham alleges that defendant Diversified Consultants, Inc., violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*, when it attempted to collect a debt by (1) using an automatic telephone dialing system to place non-emergency calls to her cellular telephone without her prior express consent and (2) using an artificial or prerecorded voice during the calls. Defendant has filed a motion to stay this case pending resolution of issues before the Federal Communications Commission (FCC) **(ECF doc. 15)**. Because resolution of issues by the FCC could clarify matters in this case, the primary jurisdiction doctrine applies and the motion to stay is granted.

The TCPA prohibits calls to certain telephone numbers, including numbers assigned to cellular telephones, using an "automatic telephone dialing system" (ATDS) or "an artificial or prerecorded voice," except in an emergency or with the recipient's prior express

consent.[1] It defines an ATDS as "equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[2] The FCC, which Congress vested with authority to prescribe regulations implementing the TCPA's requirements,[3] ruled in 2003 that so-called "predictive dialers"[4] fall "within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of congress."[5] The FCC stated that predictive dialers have hardware that, "when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers."[6] In 2008, the FCC issued an order affirming its ruling that predictive dialers are ATDSs subject to the TCPA's restrictions on the use of auto-dialers.[7] The 2008 order further

---

[1] 47 U.S.C. § 227(b)(1).

[2] *Id.* at § 227(a)(1).

[3] *Id*. at § 227(b)(2).

[4] "A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459, 17503 (2002).

[5] *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14017 (2003).

[6] *Id*.

[7] *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 (2008).

made clear that the TCPA applies to calls made for the purpose of collecting a debt.[8]

According to defendant, however, the FCC's 2003 and 2008 orders have created uncertainty as to whether *all* predictive dialers meet the definition of an ATDS, or whether predictive dialers that lack "the current capacity for random or sequential number generation" do not meet the definition of an ATDS.[9] Stated another way, the question is "whether the dialing equipment's *present* capacity is the determinative factor in classifying it as an ATDS, or whether the equipment's *potential* capacity with hardware and/or software alterations should be considered, regardless of whether the potential capacity is utilized at the time the calls are made."[10] Defendant acknowledges that the dialing system it used to call plaintiff qualifies as a predictive dialer, but asserts that the dialing system does not meet the statutory definition of an ATDS because it was not used for telemarketing, does not have the *present* capacity to store or produce telephone numbers to be called using a random or sequential

---

[8]*Id.* at 564. Three years earlier, the FCC had assumed that the TCPA applied to debt collection calls when it ruled that collection agencies need not disclose their names where such disclosure was prohibited by the Fair Debt Collection Practices Act. *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788, 3802–03 (2005). The FCC also discussed the application of the TCPA to calls made by debt collectors in 2007. *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (2007).

[9]ECF doc. 16 at 7.

[10]*Mendoza v. UnitedHealth Grp. Inc.*, No. 13-1553, 2014 WL 722031, at *2 (N.D. Cal. Jan. 6, 2014).

number generator, and does not use artificial or prerecorded voices.[11]

There are at least two petitions for declaratory ruling pending before the FCC that ask the FCC to decide whether equipment lacking the present capacity for random or sequential number generation, such as the dialing system used by defendant, constitutes an ATDS. First, Communication Innovators filed a petition on June 7, 2012, seeking a declaration "that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' ('autodialers') under the TCPA."[12]  On October 16, 2012, the FCC's Consumer and Governmental Affairs Bureau (CGB) issued a public notice requesting comment on Communication Innovators's petition.[13]  The comment period ended on November 30, 2012.[14]  A draft order on Communication Innovators's petition was circulated to the full Commission on May 13, 2013.[15]  On September 10, 2013, the then-acting chief of

---

[11]ECF doc. 16 at 4 (citing ECF doc. 16-2, declaration of Mavis Pye in support of motion to stay, at ¶4).

[12]*See* ECF doc. 16-1 at 13.  Defendant asserts that whether the TCPA applies to non-telemarketing activity (i.e., debt collection activity) is an open question.  The court disagrees, but recognizes that the FCC will have a chance to clarify its position in this regard in response to the Communication Innovators petition.

[13]*See id.* at 82.

[14]*Id.*

[15]FCC Items on Circulation, *available at* http://transition.fcc.gov/fcc-bin/circ_items.cgi (last visited May 13, 2014).

the CGB sent letters to certain members of Congress stating that a draft order to resolve the petition was "under consideration by the Commission," that "Communication Innovators . . . met with the staff recently to discuss the matter," and that she "expect[ed] the Commission to resolve it soon."[16]

Similarly, YouMail, Inc. filed a petition on April 19, 2013, asking the FCC to clarify, among other things, that the ATDS definition includes only equipment with a current capacity to store and produce telephone numbers to be called using a random or sequential number generator. On June 25, 2013, the CGB issued a public notice requesting comments on the issues raised in YouMail's petition.[17] The comment period ended on August 9, 2013.[18] Presumably, a draft order resolving the petition will be circulated to the Commission soon.

Defendant asserts that the FCC's decisions on these petitions will clarify issues in this case. Defendant asks the court, therefore, to stay this action under the primary jurisdiction doctrine, or under the court's inherent authority, until the FCC makes its determinations. The court finds that the primary jurisdiction doctrine counsels in favor of a stay.[19]

Under the primary jurisdiction doctrine, courts may stay proceedings pending

---

[16]*See* ECF doc. 16-1 at 5–10.

[17]*See id.* at 87.

[18]*Id.*

[19]Reaching this conclusion, the court need not determine whether a stay also is appropriate under the court's inherent authority.

resolution of material issues that fall within the special competence of an administrative agency.[20]  "The purpose of the doctrine is to 'allow agencies to render opinions on issues underlying and related to the cause of action.'"[21] In deciding whether to invoke the primary jurisdiction doctrine, the Tenth Circuit has directed district courts to "consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency."[22]  "Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate."[23]  There is "no fixed formula for applying the doctrine," however, and courts must "consider case-by-case whether the reasons for the existence of the doctrine are present and whether the purposes it serves, i.e., uniformity and resort to administrative expertise, will be aided by its application in the particular litigation."[24]

    The court finds that the situation in this case fits the purpose of the doctrine.  Here is

---

[20]*Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

[21]*TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)).

[22]*Id.* at 1239 (quoting *Crystal Clear*, 415 F.3d at 1179).

[23]*Id.*

[24]*Id.* (quotations and modifications omitted).

a recap of what we know: (1) Plaintiff alleges that one of the two ways defendant violated the TCPA is by using an ATDS to call her cellular telephone. (2) Defendant disputes that allegation by arguing that the dialing system it used to call plaintiff does not qualify as an ATDS because it does not have the *present* capacity to store or produce telephone numbers to be called using a random or sequential number generator. (3) The TCPA defines an ATDS as "equipment that has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator."[25] (4) Neither the TCPA nor previous FCC orders address the meaning of "capacity," specifically, whether it should be interpreted broadly to mean potential capacity or narrowly to mean present capacity.

The court agrees with defendant that the statutory reference to "capacity" is unclear. The seminal question of its reach is a technical one, which falls in the ambit of the FCC's administrative expertise.[26] How the FCC ultimately defines "capacity" is a matter of administrative discretion.[27] It is proper for the FCC to make this determination in the first

---

[25]*Id.* at § 227(a)(1) (emphasis added).

[26]*See Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1040 (10th Cir. 1993) ("[I]t appears to us that the appropriate characterization of [services regulated by the FCC] requires expertise and a familiarity with the industry."); *Mendoza*, 2014 WL 722031, at *2 (noting that "the FCC is in the process of utilizing its recognized expertise to consider" the question of whether present capacity or potential capacity qualifies equipment as an ATDS).

[27]*See Hurrle v. Real Time Resolutions, Inc.*, No. C13-5765, 2014 WL 670639, at *1 (W.D. Wash. Feb. 20, 2014) (ruling that "the law is unclear whether Congress intended the TCPA to prevent" the use of an autodialer to call debtors and finding that the "issue is clearly one of policy" to be decided by Congress and the FCC).

instance, such that uniformity and consistency in the application of the TCPA can be accomplished. Significantly, this very issue is presently pending before the FCC in the Communication Innovators and YouMail petitions. "There is therefore a real possibility that a decision by this court prior to the FCC's response to the . . . petition[s] would result in conflicting decisions, either between our court and the FCC or our court and another circuit if the FCC ruling is appealed."[28] Because the issue defendant raises is "presently pending before the FCC . . . the FCC must be allowed to resolve the issue initially under the doctrine of primary jurisdiction."[29]

Plaintiff argues that the FCC has issued several orders and rulings on the general topic of whether predictive dialers meet the ATDS definition, and all have concluded that they do. But none of these orders has addressed the specific "capacity" question raised by defendant, as well as by Communication Innovators and YouMail.[30] Thus, the FCC has not decided yet

---

[28] *Mical*, 1 F.3d at 1040.

[29] *Id.* at 1033; *see also TON Servs.*, 493 F.3d at 1243 ("[W]here pending FCC actions may affect the outcome of a plaintiff's federal court litigation, this court has previously assumed a stay is appropriate."); *Mendoza*, 2014 WL 722031, at *2 (noting the September 10, 2013 correspondence from the acting chief of the CGB and stating, "allowing the FCC to resolve the foregoing issues prior to adjudicating the issue in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate.").

[30] *See Mical*, 1 F.3d at 1040. (sua sponte staying case under the primary jurisdiction doctrine where, although "the FCC ha[d] issued several orders and rulings on the general topic" before the court, "none . . . address[ed] the *precise* issue" before the court).

the precise, narrow question relevant here.[31]

Plaintiff also makes the broad-brush argument that it could be prejudiced by a stay because defendant "has 89 lawsuits (including the instant matter) pending in federal courts."[32] Plaintiff asserts that if the other cases go forward while this case is stayed, the "viability of the Defendant" could become a concern.[33] This argument is not supported by evidence. Plaintiff has presented nothing from which the court could conclude that defendant's viability is threatened. But in any event, prejudice to the non-moving party is not a significant factor for the court's consideration under the primary jurisdiction doctrine.

IT IS THEREFORE ORDERED:

1.      Defendant's motion to stay is granted. All pretrial proceedings in this case, including discovery and the pretrial conference, are stayed until a decision is issued by the FCC on the Communication Innovators petition.

2.      Within **fourteen days** of the FCC's order on that petition, defendant shall file a status statement informing the court of the FCC's order and attaching a copy of the order as an exhibit. If the FCC does not issue an order on the Communication Innovators petition by **October 1, 2014,** defendant shall file a status statement by that date advising the court as

---

[31] For this reason, plaintiff's argument that the court may not "review" a final order of the FCC is not applicable.

[32] ECF doc. 19 at 2.

[33] *Id.* at 3.

to the FCC's progress on resolving the petition.

      IT IS SO ORDERED.

      Dated May 14, 2014, at Kansas City, Kansas.

                                                  s/James P. O'Hara  
                                                  James P. O'Hara  
                                                  U.S. Magistrate Judge